UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BLUECROSS BLUESHIELD OF TENNESSEE, INC., | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-CV-00271-JRG-CHS |
| | ) |
| CHRISTOPHER R. NICOLOPOULOS, in His Official Capacity as Commissioner of the New Hampshire Insurance Department, | ) ) ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

New Hampshire has a fertility treatment mandate that requires insurance companies doing business there to provide coverage for medically necessary fertility treatments. Tennessee has no such mandate.

In 2020 and 2021, Bluecross Blueshield of Tennessee ("BCBST") sold PhyNet Dermatology, LLC ("PhyNet") group health insurance plans (the "PhyNet Plans") which, as permitted by Tennessee law, excluded coverage for fertility treatments. In October 2021, the New Hampshire Insurance Department (collectively with Defendant Christopher Nicolopoulos, in his official capacity as Commissioner, "NHID") issued an Order to Show Cause and Notice of Hearing (the "Show Cause Order") to BCBST after it learned that BCBST denied coverage for B.C.'s fertility treatments—B.C. is a New Hampshire resident, PhyNet employee, and Member of the PhyNet Plans. BCBST believes that compliance with the Show Cause Order

1

would cause it to breach its Employee Retirement Income Security Act ("ERISA")-mandated fiduciary duties under the PhyNet Plans. Accordingly, it brought this action asking the Court to enjoin the Show Cause Order and bar NHID from instituting any further enforcement actions against it arising from its refusal to comply with New Hampshire's insurance laws.

Now, this matter is before the Court on BCBST's Motion for Partial Summary Judgment as to Counts One, Two, and Three [Doc. 37] and Memorandum in Support [Doc. 38]; NHID's Response [Doc. 77]; and BCBST's Reply [Doc. 82]. BCBST argues that this is a choice-of-law dispute and, because Sixth Circuit precedent requires the application of the Restatement (Second) of Conflicts of Laws (the "Restatement") to resolve choice-of-law disputes involving ERISA-covered plans, the Court should apply the Restatement, hold that Tennessee law applies to the PhyNet Plans, and grant BCBST summary judgment on Counts One through Three.

The Court disagrees with BCBST's characterization of this case and its understanding of the ERISA scheme. This case is not about BCBST's duties (or B.C.'s rights) under the PhyNet Plans; thus, choice-of-law under the Plans is irrelevant, much less dispositive. Rather, this case concerns New Hampshire's authority to regulate the business of insurance within its borders. ERISA's "Saving Clause" specifically preserves that authority, even when such regulation is contrary to an ERISA-covered plan's terms. Accordingly, for the reasons stated below, BCBST's Motion for Partial Summary Judgment [Doc. 37] is **DENIED**.

2

Additionally, because the Court finds that BCBST is not entitled to relief under ERISA, the Court gives **NOTICE OF ITS INTENT TO GRANT SUMMARY JUDGMENT** to NHID. BCBST may file a memorandum within **twenty-one (21) days** of the date of this Order setting forth any arguments as to why NHID is not entitled to such relief; NHID may file a response within **fourteen (14) days** of BCBST's memorandum; and BCBST may file a reply within **seven (7)** days of NHID's response.

## BACKGROUND

**BCBST Sells and Administers the PhyNet Plans.**

BCBST is a Chattanooga, Tennessee-based, Tennessee-licensed, non-profit health insurance corporation. [BCBST Statement Material Facts, Doc. 39 ¶¶ 1–2.] Pursuant to a license agreement with the Blue Cross Blue Shield Association ("BCBSA"), BCBST sells Blue Cross and Blue Shield-branded insurance products in Tennessee and northern Georgia. [*Id.* ¶ 8.] As BCBSA's Tennessee licensee, BCBST has no offices or employees in New Hampshire and is not licensed to do business or issue health insurance policies there. [*Id.* ¶¶ 3–5.]

PhyNet is a Franklin, Tennessee-based company that provides outsourced management services for dermatology practices. [Am. Compl., Doc. 20 ¶ 14.] It has employees in Tennessee, New Hampshire, and several other states. [BCBST Statement Material Facts, Doc. 39 ¶¶ 12, 16–22.]

Every year since 2018, BCBST has marketed and sold (in Tennessee) PhyNet a group health insurance plan for its employees and their beneficiaries ("Members")—

3

the 2020 and 2021 plans, the PhyNet Plans, are at issue in this action. [*Id.* ¶¶ 12–14.] The PhyNet Plans are based on group health policy templates created by BCBST and approved by the Tennessee Department of Commerce and Insurance. [*Id.* ¶¶ 29–33.] Each Plan contains a provision excluding coverage for fertility treatments and services and a choice-of-law provision providing that Tennessee law applies where federal law does not. [*Id.* ¶¶ 27–28, 34–35; NHID Resp. Statement Material Facts, Doc. 80 ¶¶ 27–28, 35; *see also* 2020 Group Agreement, Doc. 39-2 at PageID # 655; 2020 Evidence of Coverage, Doc. 39-4 at PageID # 744; 2021 Group Agreement, Doc. 39-5 at PageID # 800; 2021 Evidence of Coverage, Doc. 39-7 at PageID # 889.] The PhyNet Plans' enrollment in 2020 and 2021 was as follows:

> <u>2020 - 870 Members</u>:
> 112 Tennessee Members
> 90 New Hampshire Members
> 668 Other State Members (22 States)
>
> <u>2021 - 1,076 Members</u>:
> 147 Tennessee Members
> 90 New Hampshire Members
> 839 Other State Member (25 States)

[BCBST Statement Material Facts, Doc. 39 ¶¶ 16–22; NHID Resp. Statement Material Facts, Doc. 80 ¶ 22.]

To service Members outside of Tennessee, BCBST participated in BCBSA's "BlueCard Program." [BCBST Statement Material Facts, Doc. 39 ¶¶ 9–10.] In short, the BlueCard Program gave out-of-state Members access to a Blue Cross Blue Shield sister-network's providers and discounted rates. [*Id.* ¶¶ 9–10, 38–39.] The sister network in New Hampshire was Anthem Health Plans of NH, Inc. (DBA Anthem

Blue Cross and Blue Shield) ("Anthem"). [NHID Resp. Statement Material Facts, Doc. 80 ¶ 3; *see also* Parties' Draft Stipulations, Doc. 67–1 ¶ 35.] Thus, for the PhyNet Plans' New Hampshire Members who sought treatment the process proceeded like this: the Member obtained medical services from Anthem's network of providers at Anthem's rates; the providers billed Anthem; Anthem transmitted the claim to BCBST; BCBST directed Anthem the amount to pay the provider based on the PhyNet Plans' terms; Anthem paid the provider; and BCBST reimbursed Anthem. [NHID Resp. Statement Material Facts, Doc. 80 ¶ 3; *see also* Parties' Draft Stipulations, Doc. 67–1 ¶¶ 35–40.]

**BCBST Denies B.C.'s Fertility Treatments and NHID Issues the Show Cause Order.**

B.C. is a New Hampshire resident, PhyNet employee, and Member of the PhyNet Plans. [BCBST Statement Material Facts, Doc. 39 ¶¶ 50–51.] Throughout 2020 and 2021, she underwent various fertility treatments but, in accord with the PhyNet Plans' fertility treatment exclusions, BCBST denied coverage for them. [*Id.* ¶ 57.] Unsatisfied with BCBST's response, B.C. then complained to NHID. [*Id.* at ¶ 49.]

New Hampshire has a fertility treatment mandate that requires insurance companies doing business there to provide coverage for medically necessary fertility treatments. *See* N.H. Rev. Stat. § 417-G:2. After receiving B.C.'s complaint, NHID tried to get BCBST to reverse its decision and cover her treatments in accordance with New Hampshire's mandate; BCBST refused. [*See* Show Cause Order, Doc. 20-1 at PageID ## 475; *see also* BCBST Mem. Supp. Summ. J., Doc. 38 at 6.] Therefore, on

5

October 1, 2021, NHID issued the Show Cause Order to BCBST. [BCBST Statement Material Facts, Doc. 39 ¶¶ 52–53.]

The Show Cause Order alleges that BCBST violated various New Hampshire laws (N.H. Rev. Stat. §§ 400-A:15 ("Statutes, Rules, and Regulations; Violation"), 417-G:2 ("Diagnosis of Infertility, Fertility Treatment, and Fertility Preservation"), and 417:4, I(h) ("Unfair Methods, Acts, and Practices Defined: Fraud or Deceit Upon Insured")) when it issued health insurance to a New Hampshire resident that did not include required coverage for fertility treatments and refused to cover B.C.'s treatments. [Show Cause Order, Doc. 20-1 at PageID # 476.] The order demands that BCBST appear for an evidentiary hearing (the "Hearing") to determine whether it violated New Hampshire insurance laws and, if so, requests a fine of no less than $52,000 and an order requiring that BCBST cease and desist from offering health insurance in New Hampshire. [*Id.* at PageID # 475–78.] NHID and BCBST agreed to stay the Hearing pending the resolution of this action. [BCBST Statement Material Facts, Doc. 39 ¶ 60.]

## PROCEDURAL POSTURE

BCBST brought this four-count ERISA action seeking injunctive and declaratory relief from the Show Cause Order and "any and all enforcement actions and adjudicatory, administrative, or legal proceedings ordered or initiated by [NHID] … and to bar the imposition of any related penalties, stemming from BCBST's alleged denial of" B.C.'s fertility treatments. [Am. Compl., Doc. 20 ¶ 1.] Count One asks the Court to bar NHID from interfering with BCBST's implementation of the PhyNet

6

Plans in accordance with their terms (i.e., in accordance with their Tennessee choice-of-law provisions). [*Id.* ¶¶ 54–62.] Count Two asks the Court bar NHID from interfering with BCBST's compliance with its ERISA-mandated fiduciary duties. [*Id.* ¶¶ 63–74.] Count Three asks the Court to bar NHID from pursuing any adjudicatory, administrative, or legal actions against BCBST in contravention of ERISA's exclusive remedy for the wrongful denial of benefits. [*Id.* ¶¶ 75–82.] Finally, Count Four asks the Court, pursuant to federal common law, to bar NHID from interfering with BCBST's implementation of the PhyNet Plans and other BCBST-administered, ERISA-covered group health plans with Tennessee choice-of-law provisions. [*Id.* ¶¶ 83–93.]

In response to BCBST's suit, NHID filed a Motion to Dismiss [Doc. 29], where it argued that because New Hampshire's fertility treatment mandate is not preempted by ERISA the Court lacked subject matter jurisdiction over the case and personal jurisdiction over NHID. [NHID Mem. Supp. Dismiss, Doc. 30 at 8–18.] The Court denied NHID's motion, holding that even if BCBST was not ultimately entitled to relief on the merits, because it sought relief under to ERISA, the Court had jurisdiction to hear the case and, therefore, personal jurisdiction over NHID pursuant to ERISA's nationwide service of process. [*See* Mem. Op. and Order, Doc. 45.]

Now, BCBST has moved for partial summary judgment on Counts One through Three. [BCBST Mot. Summ. J., Doc. 37.] It characterizes this case as a choice-of-law dispute over whether Tennessee's insurance mandates or New Hampshire's insurance mandates apply to the PhyNet Plans. [BCBST Mem. Supp. Summ. J., Doc.

7

38 at 1.] Pursuant to that theory, it argues that, in accord with the Sixth Circuit's holding in *DaimlerChrysler*, choice-of-law disputes involving ERISA-covered plans are resolved using § 187 of the Restatement and, under § 187, Tennessee law applies. [BCBST Mem. Supp. Summ. J., Doc. 38 at 8–10 (discussing *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918 (6th Cir. 2006).] Therefore, BCBST concludes that any attempt by NHID to enforce New Hampshire's fertility treatment mandate interferes with its ERISA-mandated fiduciary duties to administer the PhyNet Plans according to their terms (i.e., in accordance with their Tennessee choice-of-law provisions). [*Id.* at 21–24.] BCBST further argues that any action by NHID is a proxy to enforce B.C.'s rights under the PhyNet Plans and, thus, an improper end-around ERISA's exclusive remedy. [*Id.* at 24–25.]

In its response to BCBST's Motion for Partial Summary Judgment, NHID asserts that "[t]he question central to this case is whether it is lawful for [NHID] to exercise the State of New Hampshire's regulatory authority over BCBST." [NHID Resp. Br., Doc. 77 at 1.] In accord with that characterization of the case, NHID explains that, as evidenced by ERISA's Saving Clause, "Congress intended to leave to the states the power to regulate insurance companies and insurance contracts." Therefore, it argues that it has authority to enforce New Hampshire's insurance laws against BCBST regardless of the PhyNet Plans' choice-of-law provisions. [*Id.* at 11 (quoting *Cate v. Blue Cross and Blue Shield of Ala.*, 434 F.Supp. 1187, 1191 n.5 (E.D. Tenn. 1977)).] Alternatively, NHID argues that because proper application of § 187 requires "fact-specific inquiry into the scope and nature of BCBST's insurance-related

activity in New Hampshire and with New Hampshire residents[,]" summary judgment is premature. [*Id.* at 20.]

## LEGAL STANDARD

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *id.* at 325, at which point the nonmoving party, to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on

9

a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (6th Cir. 2015).

## ANALYSIS

Before starting its analysis, the Court must address a couple of preliminary matters. First, BCBST has not argued that New Hampshire's fertility treatment mandate is preempted by ERISA—in fact, it has effectively conceded the point. [*See* BCBST Mem. Supp. Summ. J., Doc. 38 at 7 ("ERISA also saves from preemption a state law 'which regulates insurance,' meaning that such state laws can still apply to ERISA-covered insured plans, such as the PhyNet plan. Pursuant to this so-called 'savings clause,' state benefits mandates are among the state insurance laws saved from ERISA preemption.") (cleaned up).] Rather, it argues that it is not subject to the mandate because the PhyNet Plans contain enforceable Tennessee choice-of-law provisions and ERISA commands that the Plans be administered in accordance with those provisions. [*Id.* at 7–10.] As briefly discussed below, it is well-settled law that states can mandate that insurers include certain types of coverage in their insurance plans. Accordingly, the Court need not analyze whether New Hampshire's mandate is preempted by ERISA.

10

Second, even though BCBST references Due Process concerns in its briefing, it did not plead any Due Process claims. [*See* Am. Compl., Doc. 20; BCBST Mem. Supp. Summ. J., Doc. 38 at 16 ("Under analogous circumstances, the courts have universally held, under the U.S. Constitution's Due Process Clause, that, under the BlueCard program, BCBST would *not* have sufficient contacts to be subject to jurisdiction in New Hampshire[.]") (emphasis in original).] Therefore, the Court will not consider the matter.

The only issue before the Court is whether BCBST's ERISA-mandated fiduciary duties under the PhyNet Plans immunize it from New Hampshire Law—or, said differently, whether BCBST can use the PhyNet Plans' Tennessee choice-of-law provisions to shield itself from NHID's regulatory authority. It cannot.

## A. ERISA Preserves the Several States' Authority to Regulate Insurance.

Congress passed ERISA for the dual purposes of encouraging employers to offer employee benefit plans while also ensuring that employees and their beneficiaries received the benefits they are entitled to under such plans. *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) ("Congress[] desire[d] to offer employees enhanced protection for their benefits, on the one hand, and, on the other, it[] desire[d] not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefits plans in the first place.") (citations omitted). For employers and plan administrators, ERISA "assur[es] a predictable set of liabilities" by creating "uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has

11

occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002) (citations omitted). For example, "ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (cleaned up). Specifically, ERISA's "Preemption Clause" provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a).[1] Thus, by prescribing "a uniform body of benefits law … [employers and plan administrators are relieved of] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990); *see also Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S.Ct. 474, 480 (2020) ("ERISA is therefore primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits, or by binding plan administrators to specific rules for determining beneficiary status[.]") (internal citations omitted).

For employees and beneficiaries, ERISA "make[s] the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 943–44 (2016) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995)); *see also Shaw*, 463 U.S. at 90 ("ERISA is a comprehensive statute

---

[1] "A state law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).

12

designed to promote the interests of employees and their beneficiaries in employee benefit plans.") (citations omitted). For instance, by enumerating various fiduciary duties for plan administrators, ERISA ensures that plan participants' monies are responsibly managed. *See* 29 U.S.C. § 1104(a) ("Fiduciary duties"); *see also Trs. of Sheet Metal Workers Local 7 Zone 1 Pension Fund v. Pro Servs., Inc.*, 65 F.4th 841, 847 (6th Cir. 2023) ("Although ERISA is a complex statute, its purpose is simple: to establish a uniform regulatory regime for plan administration that protects monies belonging to plan beneficiaries while such funds are held and managed by others.") (cleaned up). Also, ERISA provides the exclusive remedy for challenges involving the wrongful denial of benefits and, thus, gives employees and beneficiaries "ready access to the Federal courts." 29 U.S.C. § 1001(b); *see also Davila*, 542 U.S. at 209 (providing that ERISA's civil enforcement mechanism is exclusive); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987) ("The civil enforcement scheme of § [1132](a) is one of the essential tools for accomplishing the stated purposes of ERISA.").

Despite ERISA's emphasis on uniform federal regulation of employee benefit plans, it contains a Saving Clause stating that "nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance[.]" 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has held that Congress intended the Saving Clause to preserve the several States' substantial authority to regulate the business of insurance in accordance with the McCarran-Ferguson Act; in *Metropolitan Life*, it stated:

> Congress' "primary concern" in enacting McCarran-Ferguson was to "ensure that the States would continue to have the ability to tax and

13

regulate the business of insurance." That Act provides: "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." The ERISA saving clause, with its similarly worded protection of "any law of any State which regulates insurance," appears to have been designed to preserve the McCarran-Ferguson Act's reservation of the business of insurance to the States. The saving clause and the McCarran-Ferguson Act serve the same federal policy and utilize similar language to define what is left to the States. Moreover, § 514(d) of ERISA, 29 U.S.C. § 1144(d), explicitly states in part: "Nothing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States."

*Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 744 n.21 (1985) (internal citations omitted).

Even though an insurer may be a fiduciary of an ERISA-covered plan, the Saving Clause preserves its status as "an insurer for purposes of state laws … [and it] is therefore not relieved from state insurance regulation." *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). Further, pursuant to the Saving Clause, states retain the authority to implement laws regulating insurance even where those laws would affect the terms of an ERISA-covered plan. *Id.* at 61 ("[E]mployee benefit plans that are insured are subject to indirect state insurance regulation. … [and t]he ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer."). In accord with the Saving Clause, the Supreme Court has upheld "any willing provider" laws, *Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003) (Kentucky law prohibiting health insurers from discriminating against healthcare providers willing to meet plan terms and conditions saved from ERISA preemption), "anti-subrogation" laws, *FMC*, 498 U.S. at 52 (Pennsylvania law prohibiting insurance plans from requiring reimbursement for third party recovery in actions

14

arising from car accidents saved from ERISA preemption), and, importantly for this case, "benefit mandates," *Metro. Life*, 471 U.S. at 724 (Massachusetts law requiring insurers to provide coverage for certain minimum mental-healthcare benefits saved from ERISA preemption).

**B.    BCBST Cannot Use Its Fiduciary Duties Under ERISA or the Terms of the PhyNet Plans to Shield Itself from New Hampshire's Insurance Laws.**

Under the ERISA scheme, insurers often (if not always) wear two hats. First, they are businesses that market and sell insurance plans to various entities. In this role, the Saving Clause, by preserving McCarran-Ferguson, dictates that they comply with the insurance laws of the several States. *See* 29 U.S.C. § 1144(b)(2)(A). Practically, this means ensuring that the policies they sell conform to the laws of those states in which they do business. *See FMC*, 498 U.S. at 63 ("By recognizing a distinction between insurers of plans and the contracts of those insurers, which are subject to direct state regulation … we observe Congress' presumed desire to reserve to the States the regulation of the "business of insurance."). Second, insurers act as plan administrators and fiduciaries of the plans that they have sold. In this role, ERISA mandates that they administer plans according to the plans' terms. *See* 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA].). BCBST has conflated these two distinct roles and has mischaracterized this case as one involving its duties (and B.C.'s rights)

15

under the PhyNet Plans as opposed to one concerning New Hampshire's authority to enforce its insurance laws.

BCBST argues that, under Sixth Circuit precedent established in *DaimlerChrysler*, choice-of-law disputes involving ERISA-covered plans are resolved using the Restatement and application of the Restatement dictates that the Court enforce the PhyNet Plans' Tennessee choice-of-law provisions. [BCBST Mem. Supp. Summ. J., Doc. 38 at 8–10.] Although BCBST is correct about what *DaimlerChrysler* says, it is incorrect about is applicability to this action. *DaimlerChrysler* involved a question of plan participants' rights and duties under an ERISA-covered plan—no such question exists here. *See DaimlerChrysler*, 448 F.3d at 921 (interpleader action by plan fiduciary for declaration as to which of two claimants is surviving spouse and entitled to beneficiary benefits).

The record establishes that NHID, in accord with its authority under McCarran-Ferguson, issued the Show Cause Order against BCBST in its capacity as an insurer. [Show Cause Order, Doc. 20-1 at PageID # 474–78.] The Hearing is to determine whether BCBST violated New Hampshire law when it issued health insurance to a New Hampshire resident that did not include required coverage for fertility treatments. [*Id.*] It is not to decide if the PhyNet Plans are required to cover fertility treatments generally or if B.C. is entitled to coverage for her treatments—indeed, those issues are already settled under New Hampshire law. [*Id.*] Accordingly, BCBST's duties (and B.C.'s rights) under the PhyNet Plans are not genuinely at issue

16

in this action, *DaimlerChrysler* is inapposite, and the Plans' choice-of-law provisions are irrelevant, much less dispositive.

BCBST argues that the Court must enjoin the Show Cause Order because if it does not BCBST will be forced to breach its fiduciary duties under the PhyNet Plans—that is, it will be required to administer them contrary to their Tennessee choice-of-law provisions. Effectively, BCBST is asking the Court to find that the PhyNet Plans' choice-of-law provisions supersede and circumvent New Hampshire's authority to enforce its insurance laws. The Supreme Court rejected this "contra plan term" argument in *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999).

There, Ward, an employee covered by a long-term group disability plan issued by UNUM, sued under ERISA after UNUM denied his claim for benefits as untimely under the terms of the plan. *Id.* at 364–365. The Ninth Circuit held that Ward could potentially prevail on his claim under California's "notice-prejudice rule" which requires that an insurer is actually prejudiced by late-notice of a claim. *Id.* at 366. UNUM appealed the Ninth Circuit's holding and argued that even if the notice-prejudice rule was saved from ERISA preemption (the Supreme Court held that it was), it was nonetheless preempted because it conflicted with the notice provision of the plan at issue. *Id.* at 375. The Supreme Court rejected UNUM's argument and held:

> UNUM'S "contra plan term" argument overlooks controlling precedent and makes scant sense. We have repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A). Under UNUM's interpretation of § 1104(a)(1)(D), however, States would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state

17

> regulation simply by inserting a contrary term in plan documents. This interpretation would virtually read the saving clause out of ERISA.

*Id.* at 375–76 (cleaned up). UNUM clearly establishes that insurers cannot rely on a plan's terms, and thus their fiduciary duties under ERISA, to shield themselves from state insurance regulation. In short, insurers cannot contract their way out of state regulation.

BCBST asserts that enforcement of the Plans' choice-of-law provisions is consistent with ERISA's emphasis on uniform, predicable plan administration. [*See, e.g.*, BCBST Mem. Supp. Summ. J., Doc. 38 at 16–17 ("[T]he Sixth Circuit and other circuits have, in fact, considered [questions of uniformity] and have emphasized the importance of *furthering* uniformity when conducting a choice-of-law analysis in an ERISA case.") (emphasis in original).] BCBST is correct that courts have consistently held that uniformity in plan administration is essential to effecting ERISA's goals. *See DaimlerChrysler*, 448 F.3d at 928 (establishing that uniformity is a "vital component of the ERISA framework."); *see also Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1285 (10th Cir. 2020) (stating that ERISA's "statutory goals [are] uniformity and predictability in the administration of ERISA plans[.]"). Nevertheless, the Show Cause Order involves state insurance regulation, not plan administration, and ERISA is simply not concerned with uniform insurance regulation. *See* Russell Korobkin, *The Failed Jurisprudence of Managed Care, and How to Fix It: Reinterpreting ERISA Preemption*, 51 UCLA L. Rev 457, 467 (2003) ("ERISA does not seek to provide regulatory uniformity to insurance companies that operate in multiple states in the way that it seeks to provide regulatory uniformity

18

to multistate employers: The savings clause protects the ability of the fifty states to enact different and inconsistent insurance regulations."). Indeed, as the Supreme Court explained in *UNUM*, where a national plan enters a local market, it is incumbent on the national plan to tailor itself to the local market's laws: "We recognize that applying the States' varying insurance regulations creates disuniformities for national plans that enter into local markets to purchase insurance. As we have observed, however, such disuniformities are the inevitable result of the congressional decision to 'save' local insurance regulation." 526 U.S. at 376 n.6 (cleaned up).

BCBST also argues that the Show Cause Order and the Hearing are end-arounds ERISA's exclusive remedy for the alleged wrongful denial of B.C.'s claims. [*See, e.g.*, BCBST Mem. Supp. Summ. J., Doc. 38 at 12 ("[T]he show-cause proceeding is, in effect, a proxy effort to reverse and remedy B.C.'s benefits denial.").] Of course the Show Cause Order was triggered by BCBST's denial of B.C.'s claims but, as the parties point out in their briefing, NHID is not a party to the PhyNet Plans—it is not a participant, beneficiary, or fiduciary. [*See id.* at 11 (citing NHID Mem. Supp. Dismiss, Doc. 30 at 14).] Therefore, NHID has no authority to bring an action against the PhyNet Plans, enforce B.C.'s rights under the Plans, or force BCBST to cover her treatments. *See* 29 U.S.C. § 1132(a) ("Persons empowered to bring a civil action"); *see also Davila*, 542 U.S. at 209 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-

empted.") (citations omitted); *but see Ins. Comm'r v. Metro. Life Ins. Co.*, 463 A.2d 793 (Md. 1983) (affirming order of Maryland Insurance Commissioner requiring insurer to pay claims of group health plan participants), *cited in Metro. Life*, 471 U.S. at 742 nn.18–19.

Additionally, the record is devoid of any proof that NHID is in fact attempting to enforce B.C.'s rights under the PhyNet Plans. For example, there is no indication that the $52,000 monetary fine requested in the Show Cause Order has any relation to the sum of B.C.'s denied claims. [*See* Show Cause Order, Doc. 20-1 at PageID # 476.] If it did, the Court fully expects that BCBST would have pointed that out.[2]

Even if BCBST could use its fiduciary duties under the PhyNet Plan to shield itself from New Hampshire's insurance laws, the Court struggles to see how its fiduciary duties are genuinely implicated. While BCBST is a fiduciary under the PhyNet Plans, it is also insurance company that exists separately and independently from them. [BCBST Statement Material Facts, Doc. 39 ¶ 1 ("[BCBST] is a non-profit Tennessee corporation headquartered in Chattanooga, Tennessee.").] Thus, an action against BCBST is not necessarily an action against the Plans. Would appearing at the Hearing implicate BCBST's fiduciary duties? No. Must a fine against BCBST be paid from the PhyNet Plans' coffers rather than BCBST's? Certainly not. Although an order requiring BCBST to cease and desist from offering insurance in New

---

[2] The $52,000 figure appears to be a per violation total pursuant to N.H. Rev. Stat. § 400-A:15(III) which provides: "Any person who knowingly violates any statute, rule, regulation, or order of the commissioner may, upon hearing … be subject to … [an] administrative fine not to exceed $2,500 per violation[.]"

Hampshire *could* implicate its fiduciary duties under the PhyNet Plans (and other plans), that issue is premature. After consideration of the evidence, NHID's hearing officer could determine that BCBST is not unlawfully doing business in New Hampshire or that some other entity, for instance Anthem Health, is the proper target of its enforcement action. *See New Hampshire-Vermont Health Serv. v. Whaland*, 410 A.2d 642 (N.H. 1979) (affirming order of New Hampshire Commissioner of Insurance requiring state agent for foreign insurers to provide coverage for benefits required by state mandate).

Moreover, the risk of BCBST breaching its fiduciary duties is likely transitory at worst—the PhyNet Plans contain "For No Cause" termination provisions providing that they "may be immediately suspended or terminated by written notice to the other party if either party is unable to perform its obligations by reason of … any ordinance, law, order or decree of any governmental authority." [2020 Group Agreement, Doc. 39-2 at PageID # 644; 2021 Group Agreement, Doc. 39-5 at PageID # 788.] Likewise, the Plans contain provisions allowing BCBST to increase premiums "upon 30 days written notice due to any changes having a direct and material impact upon the cost of providing Coverage to Members … includ[ing] … changes in applicable laws or regulations including, but not limited to … mandated benefits applicable to such coverage." [2020 Group Agreement, Doc. 39-2 at PageID # 640–41; 2021 Group Agreement, Doc. 39-5 at PageID # 785.]

Ultimately, ERISA's Saving Clause preserves the several States' authority to regulate insurers doing business in their states. New Hampshire believes that

BCBST unlawfully engaged in the practice of insurance there and issued a Show Cause Order to enforce its laws. Because the Show Cause Order does not implicate BCBST's duties under the PhyNet Plans, the Plans' choice-of-law provisions, are irrelevant, much less dispositive. Accordingly, BCBST's Partial Motion for Summary Judgment [Doc. 37] is **DENIED.** The Court reiterates, however, that because BCBST did not plead Due Process violations, it takes no position on whether BCBST has actually engaged in the practice of insurance in New Hampshire or whether BCBST's contacts with New Hampshire are enough to subject it to New Hampshire's jurisdiction.

**C.    The Court Intends to Grant Summary Judgment to NHID.**

Federal Rule of Civil Procedure 56(f)(1) provides that "After giving notice and reasonable time to respond the court may: grant summary judgment for a nonmovant[.]" Fed. R. Civ. P. 56(f)(1). Because the Court holds that BCBST cannot, as a matter of law, rely on its ERISA-mandated fiduciary duties under the PhyNet Plans to immunize itself from New Hampshire's insurance laws, it finds that BCBST is not entitled to relief and states it intends to grant summary judgment to NHID.

**CONCLUSION**

For the reasons stated above, BCBST's Motion for Partial Summary Judgment [Doc. 37] is **DENIED**. Further, because the Court finds that BCBST is not entitled to relief under ERISA, the Court gives **NOTICE OF ITS INTENT TO GRANT SUMMARY JUDGMENT** to NHID. BCBST may file a memorandum within **twenty-one (21) days** of the date of this Order, setting forth any new arguments as

22

to why NHID is not entitled to such relief; NHID may file a response within **fourteen (14) days** of BCBST's memorandum; and BCBST may file a reply within **seven (7)** days of NHID's response.

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
