UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| BLUECROSS BLUESHIELD OF | ) | |
|---|---|---|
| TENNESSEE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-CV-00271-JRG-CHS |
| | ) | |
| DAVID J. BETTENCOURT, in his | ) | |
| Official Capacity as Acting | ) | |
| Commissioner of the New Hampshire | ) | |
| Insurance Department, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Bluecross Blueshield of Tennessee, Inc.'s ("BCBST") Supplemental Briefing to the Court's June 26, 2023 Memorandum Opinion and Order (the "June 26 Order") [Doc. 84], the New Hampshire Insurance Department's (collectively with Defendant David J. Bettencourt, in his official capacity as Commissioner, "NHID") Response [Doc. 85], and BCBST's Reply [Doc. 86].

For the reasons stated below the Court finds that no questions of fact or law remain as to New Hampshire's fertility treatment mandate. Accordingly, the Court **GRANTS SUMMARY JUDGMENT** to NHID as to all claims arising from New Hampshire's fertility treatment mandate. Additionally, the Court finds that a question of law remains as to New Hampshire's unfair-business practices law. Accordingly, the parties are **ORDERED**, within fourteen days of this Order's date,

---

[1] Previously, the Defendant in this action was Christopher R. Nicolopoulos, in his Official Capacity as Commissioner of the New Hampshire Insurance Department. It appears, however, that Commissioner Nicolopoulos has ceased holding office on July 4, 2023. *See* Sruthi Gropalakrishnan, *New Hampshire Insurance Commissioner Nicolopoulos to step down*, CONCORD MONITOR, available at https://www.concordmonitor.com/Commissioner-Chris-Nicolopoulos-to-Not-Seek-Reappointment-50946273 (last visited August 30, 2023). Therefore, pursuant to Federal Rule of Civil Procedure 25(d), his successor Acting Commissioner Bettencourt is automatically substituted as Defendant.

to confer and file with the Court a proposed briefing schedule as to the unfair-insurance-practices law issue. To the extent one or both of the parties believes that factual discovery is necessary, they shall include with their filing a proposed discovery schedule identifying the facts that they contend remain in dispute.

## BACKGROUND

New Hampshire has a fertility treatment mandate that requires insurance companies doing business there to provide coverage for medically necessary fertility treatments. N.H. Rev. Stat. § 417:G2 ("Diagnosis of Infertility, Fertility Treatment, and Fertility Preservation"). In 2020 and 2021, BCBST sold PhyNet Dermatology, LLC ("PhyNet"), a Tennessee-based company with employees and operations in New Hampshire group health insurance plans (the "PhyNet Plans"). [Am. Compl., Doc. 20, ¶ 14; BCBST Statement of Material Facts, Doc. 39, ¶¶ 12, 16–22]. As permitted by Tennessee law, the PhyNet Plans excluded coverage for fertility treatments. [BCBST Statement of Material Facts, Doc. 39, ¶¶ 12–14, 27–35; NHID Resp. Statement Material Facts, Doc. 80 ¶¶ 27–28, 35; *see also* 2020 Group Agreement, Doc. 39-2, at PageID # 655; 2020 Evidence of Coverage, Doc. 39-4, at PageID # 744; 2021 Group Agreement, Doc. 39-5, at PageID # 800; 2021 Evidence of Coverage, Doc. 39-7, at PageID # 889].

In October 2021, NHID issued an Order to Show Cause and Notice of Hearing (the "Show Cause Order") to BCBST after it learned that BCBST denied coverage for B.C.'s fertility treatments. B.C. is a New Hampshire resident, PhyNet employee, and Member of the PhyNet Plans. The Show Cause Order alleges that BCBST violated various New Hampshire laws (N.H. Rev. Stat. §§ 400-A:15 ("Statutes, Rules, and Regulations; Violation"), 417-G:2 ("Diagnosis of Infertility, Fertility Treatment, and Fertility Preservation"), and 417:4, I(h) ("Unfair Methods, Acts, and Practices Defined: Fraud or Deceit Upon Insured")) when it issued health insurance to a

New Hampshire resident that did not include required coverage for fertility treatments and refused to cover B.C.'s treatments. [Show Cause Order, Doc. 20-1, at PageID # 476]. The Show Cause Order demands that BCBST appear for an evidentiary hearing (the "Hearing") to determine whether it violated New Hampshire insurance laws and, if so, requests a fine of no less than $52,000 and an order requiring that BCBST cease and desist from offering health insurance in New Hampshire. [*Id.* at PageID # 475–78].

In response to the Show Cause Order, BCBST brought this four-count action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking injunctive and declaratory relief from the Show Cause Order and "any and all enforcement actions and adjudicatory, administrative, or legal proceedings ordered or initiated by [NHID] . . . and to bar the imposition of any related penalties, stemming from BCBST's alleged denial of" B.C.'s fertility treatments. [Am. Compl., Doc. 20 ¶ 1]. Count One asks the Court to bar NHID from interfering with BCBST's implementation of the PhyNet Plans in accordance with their terms (i.e., in accordance with their Tennessee choice-of-law provisions). [*Id.* ¶¶ 54–62]. Count Two asks the Court bar NHID from interfering with BCBST's compliance with its ERISA-mandated fiduciary duties. [*Id.* ¶¶ 63–74]. Count Three asks the Court to bar NHID from pursuing any adjudicatory, administrative, or legal actions against BCBST in contravention of ERISA's exclusive remedy for the wrongful denial of benefits. [*Id.* ¶¶ 75–82]. Finally, Count Four asks the Court, pursuant to federal common law, to bar NHID from interfering with BCBST's implementation of the PhyNet Plans and other BCBST-administered, ERISA-covered group health plans with Tennessee choice-of-law provisions. [*Id.* ¶¶ 83–93].

In response to this suit, NHID filed a Motion to Dismiss [Doc. 29], in which it argued that because New Hampshire's fertility treatment mandate is not preempted by ERISA, the Court lacks

3

subject matter jurisdiction over the case and personal jurisdiction over NHID. [NHID Mem. Supp. Dismiss, Doc. 30, at 8–18]. The Court denied NHID's motion, holding that even if BCBST was not ultimately entitled to relief on the merits, because it sought relief under ERISA, the Court had jurisdiction to hear the case and, therefore, personal jurisdiction over NHID pursuant to ERISA's nationwide service of process. *See* [Mem. Op. & Order, Doc. 45].

After the Court's denial of NHID's Motion to Dismiss, BCBST filed a Motion for Partial Summary Judgment as to Counts One through Three [Doc. 37]. In its motion, as it has throughout this case, BCBST argued that this action is a involves a choice-of-law dispute over which state's benefits mandates apply to the PhyNet Plans, New Hampshire's or Tennessee's. [BCBST Mem. Supp. Summ J., Doc. 38, at 1; *see also* BCBST Resp. Opp'n Mot. Dismiss, Doc. 32, at 1–2 (arguing that this case involves a choice-of-law dispute regarding what law applies to the PhyNet Plans)]. The assumption underlying BCBST's argument is that the Show Cause Order is a vehicle through which NHID was attempting to enforce B.C.'s rights under the PhyNet Plans, thus implicating the plans' terms.

In response to BCBST's motion, NHID asserted that "[t]he question central to this case is whether it is lawful for [NHID] to exercise the State of New Hampshire's regulatory authority over BCBST." [NHID Resp. Br., Doc. 77, at 1]. In accord with that characterization of the case, NHID argued that, as evidenced by ERISA's Saving Clause, "Congress intended to leave to the states the power to regulate insurance companies and insurance contracts." [*Id.* at 11 (quoting *Cate v. Blue Cross and Blue Shield of Ala.*, 434 F. Supp. 1187, 1191 n.5 (E.D. Tenn. 1977))]. Therefore, it argued, because its fertility mandate was saved from ERISA preemption, it had authority to enforce its laws against BCBST regardless of the PhyNet Plans' terms. [*Id.* at 9–10].

4

The Court denied BCBST's motion in its June 26 Order and held that because NHID—in accord with its authority under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, and as preserved by ERISA's Saving Clause, 29 U.S.C. § 1144(b)(2)(A)—issued the Show Cause Order against BCBST in it capacity as an insurer allegedly wrongfully doing business in New Hampshire, the choice-of-law provision under the PhyNet Plans was irrelevant, much less dispositive. [June 26 Order, Doc. 83, at 16–17]. Moreover, it held that *UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358 (1999) establishes that insurers cannot rely on an ERISA-covered plan's terms, and thus their fiduciary duties under ERISA, to shield themselves from state insurance regulation. [*Id.* 17–18]. Therefore, it held that BCBST cannot use it fiduciary duties under the PhyNet Plans to shield itself from compliance with New Hampshire's fertility benefit mandate and, thus, is therefore not entitled to relief from the Show Cause Order under ERISA. [*Id*]. Accordingly, in accord with Federal Rule of Civil Procedure 56(f)(1), it gave notice to BCBST that it intended to grant summary judgment to NHID and gave BCBST twenty-one days to file a memorandum setting forth any new arguments as to why NHID is not entitled to such relief. [*Id.* at 22–23].

In accord with the Court's Order, BCBST has filed a Supplement Memorandum setting forth five reasons why the Court should not grant summary judgment to NHID, arguing that there are :

(1) factual questions regarding whether BCBST does business in New Hampshire;
(2) factual questions about whether the fertility treatment mandate and unfair-insurance practices law apply to BCBST;
(3) factual and legal questions regarding whether federal common law prohibits the application of New Hampshire's laws;
(4) factual and legal disputes about whether NHID violated ERISA's exclusive remedy rule; and
(5) a legal dispute regarding whether New Hampshire's unfair-insurance-practices law is saved from ERISA preemption.

5

[BCBST Suppl. Mem., Doc. 84, at 2].

In response, NHID points out as a general matter that as to Counts One through Three, BCBST has consistently maintained that there are no factual disputes and the counts could be resolved as a matter of law and, on that basis, has steadfastly opposed discovery on those claims. [NHID Resp. Suppl. Mem., Doc. 85 ¶¶ 2–8]. NHID also argues that BCBST has disclaimed any arguments that NHID's law are not "saved" because it does not do business in New Hampshire; that the laws do not apply to it because it does not have sufficient contacts with New Hampshire; that federal common law prohibits the application of New Hampshire's laws; or that New Hampshire's unfair-insurance practice statute is not saved under ERISA. [*Id.* ¶¶ 11–16, 18]. Further, with regard to BCBST's supplemental argument four, NHID asserts that BCBST misstates the law as to ERISA's exclusive remedy rule and that the statute only preempts state law causes of action that duplicate, supplement, or supplant the ERISA civil enforcement remedy. [*Id.* ¶ 17].

## ANALYSIS

### A. No Factual or Legal Disputes Remain Regarding New Hampshire's Fertility Treatment Mandate, and NHID is Entitled to Summary Judgment on that Issue.

Beyond some clever paraphrasing of the Court's June 26 Order and subtle suggestions, BCBST has not seriously argued that New Hampshire's fertility benefits mandate is not saved from ERISA preemption. *See* [BCBST Suppl. Mem., Doc. 84 at 3 ("The Court Conditioned Any "Saved" Status of New Hampshire's Insurance Laws on BCBST 'Doing Business' in New Hampshire"), 17 ("To be sure, BCBST has 'not argued that New Hampshire's fertility treatment *mandate* is preempted by ERISA.'") (quoting June 26 Order at 10 (emphasis added)) and ("BCBST has not yet been heard as to whether the state laws NHID invokes constitute saved state insurance laws[].")]. That is, it has not argued that the fertility mandate does not satisfy the test articulated

in *Kentucky Association of Health Plans, Inc. v. Miller*, that (1) "the state law must be specifically directed toward entities engaged in insurance" and (2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." 538 U.S. 329, 341 (2003) (citations omitted). Rather, it contends that, for various reasons, the mandate does not apply to it. The Court is not convinced. As to the fertility mandate, there are no remaining questions of fact or law.

      i. <u>Arguments 1 and 2: Constitutional Due Process Questions are Not Properly Before the Court.</u>

With its first two supplemental arguments BCBST argues that the Court should not grant summary judgment to NHID because questions of fact exist regarding whether BCBST does business in New Hampshire and whether the mandate applies to BCBST under its own terms. [BCBST Suppl. Mem., Doc. 84 at 3–10]. In other words, BCBST asserts that questions of fact exist regarding whether it has sufficient contacts with New Hampshire for the state to have jurisdiction over it. This is a Constitutional Due Process issue. But, as BCBST acknowledges in its Supplemental Brief, Due Process issues are not properly before this Court. [*Id.* at 5 n.2 ("BCBST was foreclosed from [raising constitutional Due Process claims], among other reasons because a challenge to the NHID administrative proceeding solely on due-process grounds would not be an effort to enforce ERISA, but to enforce the Constitution, and the Court would have no personal jurisdiction over Defendant for such a claim.")]. [2] Despite BCBST's invitation for the Court to let Due Process concerns inform its analysis, the Court declines to consider an issue that

---

[2] The Court notes that BCBST made the strategic decision to bring this action in this Court rather than in the United States District Court for the District of New Hampshire where, if it had genuine Due Process concerns, those claims could be addressed.

is not properly before it.[3] [*Id.* ("Though BCBST has not raised a due-process claim, nothing prevents 'Due Process concerns' from informing the Court's ERISA analysis.")].

      ii. Argument 3: Federal Common Law Does Not Prohibit the Application of New Hampshire's Laws to NHID.

In its third supplemental argument, BCBST argues that there are factual and legal questions regarding whether application of the mandate is prohibited by common law. [*Id.* at 10]. Relying primarily on *Ellis v. Liberty Life Assurance, Company*, BCBST asserts that the principles of uniformity and administrative efficiency require the Court establish a common law rule that an ERISA policy's choice-of-law provision control which state's mandates applies to the policy. *See* [*Id.* at 10–14 (discussing *Ellis*, 958 F.3d. 1271 (10th Cir. 2020))]. This argument, despite BCBST's attempt to distinguish it, is materially similar to the arguments BCBST made, and the Court considered, in BCBST's Motion for Partial Summary Judgment. *See* [*Id.* at 13 n.6 (distinguishing argument)]. As the Court explained in its June 26 Order, it rejects BCBST's characterization of the Show Cause Order as an action against the PhyNet Plans or to enforce B.C.'s rights. *See* [June 26 Order, Doc. 83, at 19 ("NHID has no authority to bring an action against the PhyNet Plans, enforce B.C.'s rights under the Plans, or force BCBST to cover her treatments.")]. Therefore, *Ellis*,

---

[3] BCBST asserts that it has no contacts with New Hampshire because any Member claims in the state are processed through its Blue Card program: "Under analogous circumstances, the courts have universally held, under the U.S. Constitution's Due Process Clause, that, under the BlueCard program, BCBST would not have sufficient contacts to be subjected to jurisdiction in New Hampshire[]." [BCBST Mem. Supp. Mot. Summ. J., Doc. 38, at 16; *see also* BCBST Statement of Material Facts, Doc. 39 ¶¶ 9–10, 38–39 (describing BlueCard program)]. This claim does not appear to be entirely accurate. At least one court has rejected the argument that the BlueCard program insulates BlueCross entities from personal jurisdiction in venues where they insure members but do not issue insurance. *See In re Blue Cross Blue Shield Antitrust Litig.*, 225 F.Supp.3d 1269, 1296 (N.D. Ala. 2016) (finding personal jurisdiction over Blue Cross & Blue Shield of Mississippi in Northern District of Alabama based on its "substantial business" (collecting premiums, making payments, etc.) there). But, as the Court explained in its June 26 Order, it takes no position on the issue because the claims are not properly before it. *See* [June 26 Order, Doc. 83 at 22 ("The Court reiterates, however, that because BCBST did not plead Due Process violations, it takes no position on whether BCBST has actually engaged in the practice of insurance in New Hampshire or whether BCBST's contacts with New Hampshire are enough to subject it to New Hampshire's jurisdiction.")].

which involves a dispute concerning benefits under an ERISA-covered plan, not state enforcement of insurance laws, is inapposite. [*Id.* at 18–19].

The Court understands ERISA's Saving Clause to be a preservation of the several States' substantial authority to regulate the business of insurance. *See* [*Id.* at 13–15 (analyzing the Saving Clause)]. Therefore, it declines to fashion a common-law rule that would leave the States "powerless to alter the terms of the insurance relationship in ERISA plans[,]" even when such alterations would ultimately affect the administration of the plan. *Ward*, 526 U.S. at 376; *see also FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("[E]mployee benefit plans that are insured are subject to indirect state insurance regulation . . . the ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.").

  iii. <u>Argument 4: The Show Cause Order as to the Fertility Mandate Does Not Violate ERISA's Exclusive Remedy Rule.</u>

Finally, BCBST argues that factual and legal disputes remain about whether the NHID proceeding violates ERISA's exclusive remedy rule, and it makes two arguments on this point. [BCBST Suppl. Mem., Doc. 84 at 14]. First, it asserts that "precedent establishes that a state penalty proceeding—if in any manner connected to an ERISA benefits denial—is foreclosed by ERISA's exclusive enforcement scheme." [*Id*]. Notably, BCBST cites no authority for this bold proposition. As NHID points out, the leading case on ERISA's exclusivity, *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) only provides that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is preempted. [NHID Resp. Br., Doc. 85, ¶ 17 (quoting *Aetna*, 542 U.S. at 209)].

Nonetheless, BCBST looks to *Spellman v. United Parcel Serv., Inc.*, 540 F. Supp. 2d 237 (D. Me. 2008) for support. In *Spellman*, a plan participant petitioned the district court for a civil penalty against the administrator of his ERISA-covered plan, pursuant to the Maine Workers'

9

Compensation Act, after it denied his claim for benefits while a challenge to the work-relatedness of his injury was pending before the Workers' Compensation Board. *Id.* at 240–41. Under the Act's "provision payment" rule, an ERISA administrator must provide benefits to the claimant according to the terms of their plan, even if a claim by the administrator contesting the work-relatedness of the claim is pending. *Id.* at 241. The *Spellman* court held that even though the provisional payment rule was saved from express ERISA preemption, because it provided an alternate enforcement mechanism for the denial of ERISA-covered claims, it conflicted with ERISA's enforcement scheme and was preempted. *Id.* at 246–49.

Spellman is unpersuasive for at least two reasons. First, it involved a plan participant pursuing relief for the alleged wrongful denial of benefits, not a state seeking to enforce its insurance laws. That is simply not the posture of this action. Second, assuming (without deciding) that the district court was correct in determining that Maine's provisional payment rule was saved from express ERISA preemption, this Court finds that it is materially different from New Hampshire's fertility treatment mandate. *See id* at 247 ("As the Attorney General puts it, [the provisional payment rule] 'effectively creates a mandatory contract term that requires a disability insurer to make payments to an insured instead of enforcing an occupational injury exclusion.[].'"); *see also* Me. ADC 02-031 CMR Ch. 530, § 1 ("This Rule establishes procedural requirements governing the payment of medical and disability benefits[]."). The provisional payment rule goes to the heart of the administration of an ERISA plan. That is, it tells the administrator when and how benefits must be paid and, if the administrator fails to administer the benefits in that way, subjects it to penalties. *See* Me. ADC 02-031 CMR Ch. 530, § 4. Accordingly, the non-payment of the benefit, i.e., the administration of the plan at issue, triggers the penalty.

10

Conversely, New Hampshire's fertility mandate establishes a categorical requirement that insurers must include fertility treatments as part of their coverage; it does not tell administrators when or how the coverage must be paid. Because New Hampshire's mandate categorically requires coverage for fertility treatments, a plan administrator's decision to cover or not cover this treatment is immaterial to whether an insurer who does not provide said coverage is in violation of the law. Indeed, even if BCBST, in its capacity as the PhyNet Plans' administrator, covered B.C.'s fertility treatment claims, NHID would still have a basis to issue the Show Cause Order because BCBST failed to include fertility treatments as part of its plan.[4]

Second, BCBST argues that "the Court has not yet addressed the line of cases holding that where a state insurance law is saved, it can be enforced—if at all—only through ERISA." [BCBST Suppl. Mem., Doc. 84 at 16]. Under that line of cases, BCBST argues, because a saved state insurance law becomes the "relevant rule of decision" it may only be enforced by a suit pursuant to 29 U.S.C. § 1132(a) brought by a party authorized to bring such a suit (a plan participant, beneficiary, fiduciary, or the United States Secretary of Labor). [*Id.* at 16–17]. This argument is completely undercut by *Metropolitan Life Insurance Co. v. Massachusetts*, in which the Attorney General of Massachusetts brought suit against the defendant insurance companies seeking declaratory and injunctive relief to enforce the State's mental healthcare benefits mandate. 471 U.S. 724, 734 (1985).

Ultimately, ERISA's Saving Clause preserves the several States' authority to regulate business of insurance and, pursuant to that substantial reservation of power, New Hampshire

---

[4] That the Show Cause was triggered by the denial of B.C.'s claim, i.e., that the denial of B.C.'s claim alerted NHID to the fact that BCBST insurance plans do not contain the required coverage, is irrelevant. Indeed, how else should NHID reasonably be expected to learn that BCBST was potentially in violation of its laws? Should it have waited for BCBST, which is not licensed in New Hampshire, to self-report its alleged violations or get into compliance with New Hampshire law on its own volition? [BCBST Statement of Material Facts, Doc. 39 ¶¶ 3–5]. Certainly not.

11

Case 1:21-cv-00271-JRG-CHS   Document 88   Filed 09/18/23   Page 11 of 14   PageID #: 1503

enacted a fertility mandate that required all insurers doing business there to provide coverage for medically necessary fertility treatments. Believing that BCBST is doing business in New Hampshire in violation of the fertility mandate, NHID issued the Show Cause Order against it. BCBST has not argued that the fertility mandate is not saved from ERISA preemption, but rather, that it cannot apply to BCBST because doing so would cause it to breach its fiduciary duties under the PhyNet Plans. As the Court explained in its June 26 Order, because the Show Cause Order was issued against BCBST in its capacity as an insurer, it cannot use its fiduciary duties under ERISA (i.e., the PhyNet Plans' choice-of-law provisions) to shield itself from New Hampshire's Insurance laws. And BCBST has not convinced the Court that there are any questions of fact or law remaining that foreclose the Court from granting summary judgment to NHID.

Accordingly, the Court **GRANTS SUMMARY JUDGMENT** to NHID as to all claims arising from New Hampshire's fertility treatment mandate.

### B. Legal Questions Remain Regarding New Hampshire's Unfair-Insurance-Practices Law.

From the start, the focus of this case has been almost exclusively on New Hampshire's fertility mandate. But, as BCBST points out, the Show Cause Order also alleges that BCBST violated New Hampshire's unfair-insurance-practices law. [BCBST Suppl. Mem., Doc. 84, at 17; *see also* Show Cause Order, Doc. 20-1]. In supplemental argument number five, BCBST argues that there is a legal dispute about whether New Hampshire's unfair-insurance-practices law meets the *Miller* test to be saved" from ERISA preemption—specifically part two, which provides that, to be saved, "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." [BCBST Suppl. Mem., Doc. 83, at 17 (citing *Miller*, 538 U.S. at 342)]. In support of this argument, BCBST points to various cases establishing that state bad-faith laws

are preempted by ERISA because they do not substantially affect the risk pooling arrangement between the insurer and the insured. [*Id.* at 17–18 (listing cases)].

NHID argues that BCBST should not be allowed to raise this argument now, because it previously disclaimed it. [NHID Resp. Br., Doc. 85, ¶ 18]. NHID is correct that after nearly two years of litigation, BCBST has hardly mentioned the unfair-insurance-practices law. Nevertheless, the Court is not convinced that BCBST has disclaimed it and it finds BCBST's argument on the issue well taken.

Unlike the benefits mandate, the unfair-insurance-practices law does not alter the terms of the insurance relationship, such that it substantially affects the risk pooling arrangement. *Unum*, 526 U.S. at 376. Rather, it appears to be a putative vehicle for vindicating an insured's rights. *See* N.H. Rev. Stat. § 417:4, I(h) (establishing that it is unlawful for an insurer to "engag[e] in any other transaction, practice, or course of business which operates as a fraud or deceit upon the purchaser, insured, or person with policy ownership rights.").

The Show Cause Order's language buttresses this suggestion. Regarding the unfair-insurance-practices law, the statement of the issue reads: "Whether [BCBST] violated N.H. RSA 417:4, I(h) *by refusing to cover* medically necessary fertility treatment for B.C.[]." [Show Cause Order, Doc. 20-1, at PageID # 476 (emphasis added)]. This language implies a violation springing from BCBST's administration of B.C.'s claim. Conversely, as to the fertility treatment mandate, the statement of the issue reads: "Whether [BCBST] violated [N.H. Rev. Stat. § 417:G2], *by failing to provide coverage* to consumer B.C. for medically necessary fertility treatment[]." [*Id]*. This language indicates a violation springing from the general coverage provided.

Ultimately, the Court takes no position because the parties have not been fully heard on the unfair-insurance-practices law. Accordingly, the parties are **ORDERED**, within fourteen days of

13

this Order's date, to confer and file with the Court a proposed briefing schedule as to the unfair-insurance-practices law issue and a proposed amended scheduling order. To the extent one or both of the parties believes that factual discovery is necessary, they shall include with their filing a proposed discovery schedule identifying the facts that they contend remain in dispute. The conference call scheduled for Tuesday, September 19, 2023, at 10:00 a.m. is **CANCELLED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE